Michael Catalano, J.
Defendant, Chester W. Stasiak (herein called “ Chester ”) moves for summary judgment dismissing the complaints as against him.
The complaint in Action No. 1 (herein called the “ first complaint ”) alleges that plaintiff (herein called “William”), an infant, operated a Ford automobile; that Chester owned a Chevrolet automobile; that defendants, David C. Stasiak and Mary Ann Borczycki (herein called ‘‘ David ’ ’ and ‘ ‘ Mary Ann, ’ ’ respectively) ‘1 were the operators of the automobile owned by the defendant, Chester W. Stasiak, with his knowledge, consent and permission; ” that on August 1,1960, at about 9:50 p.m., on Broadway at Filmore Avenue, Buffalo, New York, the Ford was struck by the Chevrolet while operated as aforesaid, causing injuries to William.
Chester’s answer admits ownership of the Chevrolet, but denies the rest of the first complaint.
The second complaint (of plaintiff Elma) repeats the basic allegations of the first, except that Elma alleges she was a passenger in the Ford and injured.
Chester’s answer to the second complaint is like his other answer.
*308 Chester’s affidavit states that he owns the Chevrolet; that Dorothy is his wife; David, his son; that he did not permit David to use his automobile that night; that he did not permit Mary Ann to use it; that he never did permit David to let Mary Ann use it.
Dorothy’s affidavit states that David took an extra set of automobile keys from her kitchen cupboard; that David’s name was not included in the automobile liability insurance policy; that on August 1, 1960 David was not permitted to use the automobile nor was Mary Ann; that 1 ‘ the set of keys normally used by her were in your deponent’s (Dorothy’s) possession; ” that from February to August, 1960, she allowed David to drive the automobile “ approximately four (4) or five (5) times only.”
Plaintiffs’ attorney’s affidavit states that David, a member of the American armed forces overseas, was served with summons and complaint herein; that Chester has no operator’s license, so that Dorothy drove and controlled his automobile; that “ upon information and belief,” Chester admitted “ responsibility ” and “ permission ” by paying Kathleen Gearin, the owner of the other car, for property damage caused in the accident herein.
Rosemarie Borczycki, Mary Ann’s sister, stated by affidavit that David’s parents permitted him to drive the Chevrolet on a number of times and their only statement to David was to “ drive carefully; ” that during the evening in question, David drove the car, picked up Mary Ann, who was learning to drive, and suggested she drive; that Mary Ann drove it, colliding with the Ford; “ that on August 1st, 1960, said David Stasiak came to the home of your deponent about 7 p.m. and told your deponent that he had just driven his mother to Harugari Temple on Gene-see Street to play bingo and that he- had to pick her up later that evening after bingo was over and take her home. ’ ’
Chester’s deposition states that he owned the Chevrolet; that on August 1, 1960, at about 9:00 p.m. he was in bed; that his wife was at bingo that night, she went with one of her girl friends; when asked “ Both of you had keys? ” he answered ‘‘ one key; ” it was ‘ ‘ in the kitchen cabinet; ” “I never drive; ’’ “ no license; ” David was 17 years old August 1, 1960; David used the car “ about three, four times a week; ” David was going steady with Mary Ann at the time of the accident; either Chester or Dorothy would give David permission to drive the car; on August 1, 1960, he did not say yes or no to David’s use of the car because he was sleeping.
Mary Ann’s (also known as Marion) deposition states that she is 20 years old; that her sister, Rosemarie, used to go steady *309 with David; that on August 1, 1960, David asked her if she wanted to drive the car; he had a junior operator’s license; she saw David drive it 10 or 20 times before; she had the accident while driving; “ David said he had driven his mother somewhere and that she had allowed him to have the car until he could come and pick her up again, they just went riding around; ’ ’ (this last quotation was given in answer to a question by Chester’s attorney without objection or motion to strike); David called on her sister three or four times a week in the family car; Chester never told David in her presence that David was not to use the car.
Elma Hubert’s deposition states that “Well, I had spoke to the mother (Dorothy) on the ‘ phone and she said she had left him (David) use the car.”
Section 59 of the former Vehicle and Traffic Law, entitled “Negligence in use or operation of vehicle attritutable to owner, ’ ’ provides, in part: “1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, * * * by any person
using or operating the same with the permission, express or implied, of such owner.” (Same as Vehicle and Traffic Law, § 388, added by L. 1959, ch. 775, eff. Oct. 1,1960.)
“Express” is defined to mean: “Directly and distinctly stated; * * * as an -express commandment.” (Webster’s
New International Dictionary [2d ed.].) ‘ ‘ Implied ’ ’ is correlative of express; it means: “Virtually involved or included; * * # inferential”. (Webster’s, Bid.)
The only evidence of no permission is offered by the parents of David; they are interested witnesses. David has not been examined, nor has his deposition been taken. Inferentially, at least, their statements of no permission are questioned by witnesses who speak upon knowledge, particularly as to a course of conduct of giving blanket permission to David prior to the accident.
The credibility of these interested parents, even if their sworn statements were uncontradicted and consistent, which they were not, when contradiction is impossible and so its truthfulness or accuracy is open to a reasonable doubt, is a question of fact for the jury, not a matter of law. (See Hukey v. Massachusetts Bonding & Ins. Co., 277 App. Div. 411, 414, motion for leave to appeal denied 302 N. Y. 949; Piwowarski v. Cornwell, 273 N. Y. 226, 229; Goes v. Gifford Sales & Serv., 265 App. Div. 796, 798-799, affd. 291 N. Y. 744; Leotta v. Plessinger, 8 N Y 2d 449, 461.)
*310 Chester’s authorities fall short of this case. In Owen v. Gruntz (216 App. Div. 19), one Gomesky, bailee of plaintiff’s car temporarily, bailed it to one Willover, without any knowledge or consent of the owner; in the case at bar, David borrowed the family car, an extra set of keys for which were impliedly left in the kitchen cupboard for son David to use a possible three or four times weekly to call on his steady girl, without specific limitation. In Voorhes v. Tide Water Oil Sales Corp. (240 App. Div. 710) the testimony was undisputed so that the circumstances did not warrant an inference that the son had the implied right to loan the car to third parties; here, upon the facts before the court, the owner father may be liable if both he and his wife, whose sworn statements conflict materially, are not found worthy of belief by a jury. In Atwater v. Lober (133 Misc. 652) the court held the father could not permit that which he did not know because knowledge is usually a pre-requisite to consent and permission cannot be implied from mere use without proof of knowledge thereof; in this case, Chester never drove, but gave his wife absolute consent to use his car as she desired, and full authority to give consent to others, which she had repeatedly given to son David, who impliedly had blanket permission to use this car. In Harper v. Parker (12 A D 2d 327) the son was restricted in the car’s use for a specified purpose, but he pursued some other end, which was deemed without the owner’s consent; here, during the night in question, the son was authorized to use the car at will until time to pick up his mother who was playing bingo, or so it might be inferred from the facts in issue.
The issues of fact, express or inferable, the statements of interested witnesses themselves for the jury to decide, leave this case in a posture not determinable by a court without a jury. Thus, summary judgment is not available without a jury verdict on these factual questions, however nice and close they may be. Motion denied, without costs.